```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARY MACKRIDES                    : CIVIL ACTION
                                  :
     vs.                          :
                                  : NO. 11-CV-6540
MARSHALLS, MARMAXX OPERATING      :
CORP., and THE TJX COMPANIES,     :
INC.                              :
```

### MEMORANDUM AND ORDER

**JOYNER, C.J.**                                          **April 23, 2013**

This closed personal injury action has been brought before the Court on Motion of the Plaintiff to Enforce the Settlement which the parties entered into on July 20, 2012, two days before the matter was slated to be tried before a jury. For the reasons outlined below, the motion must be denied.

### Factual Background

This case resulted from Plaintiff's slip and fall accident which occurred on October 29, 2009 at the Langhorne, Pennsylvania Marshalls' Store owned and operated by Defendants. Plaintiff sustained a fractured hip as the result of her fall, necessitating surgery with the implantation of a rod and screws. As noted, Plaintiff agreed to accept the sum of $29,750.00 to settle this case some 7 ½ months ago but according to the motion which is now before us, neither the settlement funds, nor a release have yet been forwarded by Defendants. Defendants assert

that because Plaintiff is an 86-year-old Medicare beneficiary, they cannot be compelled to forward a release or the settlement monies until such time as Plaintiff's counsel provides a Final Demand letter from the Centers for Medicare and Medicaid Services ("CMS") reflecting whether a Medicare lien exists and if so, how much money is owed to reimburse Medicare for its payment of Plaintiff's medical bills.

### Standards Applicable to Motions to Enforce Settlements

As a general rule, courts "encourage attempts to settle disagreements outside the litigative context." Wilcher v. City of Wilmington, 139 F.3d 366, 372 (3d Cir. 1998). "An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court and even in the absence of a writing." Maya Swimwear Corp. v. Maya Swimwear, LLC, 855 F. Supp. 2d 229, 233 (D. Del. 2012). A settlement agreement is a contract and is interpreted according to local law. Wilcher, supra. Likewise, the enforceability of settlement agreements is governed by principles of contract law. Pennsbury Village Associates, LLC v. McIntyre, 608 Pa. 309, 322, 11 A.3d 906, 914 (2011)(citing Mazella v. Koken, 559 Pa. 216, 739 A.2d 531, 536 (1999)).  "Courts will enforce a settlement agreement if all its material terms have been agreed upon by the parties," and "[a] settlement agreement will not be set aside absent a clear showing of fraud, duress or mutual mistake." Id,

(citing Century Inn, Inc. v. Century Inn Realty, Inc., 358 Pa. Super. 53, 516 A.2d 765, 767 (1986)).  In addition, when parties agree to resolve pending litigation through a settlement agreement and a dispute arises regarding the enforcement of that agreement, a district court may enter injunctive relief on a party's behalf to enforce a settlement agreement when it determines that one of the parties has failed to perform its obligations.  Saudi Basic Industries v. Exxon Corp., 364 F.3d 106, 112 (3d Cir. 2004); Boyd v. Cambridge Speakers Series, Inc., No. 09-4921, 2010 U.S. Dist. LEXIS 61234 at *18 (E.D. Pa. June 18, 2010).

   Because "the question of whether an undisputed set of facts establishes a contract is a matter of law,...in order to prevail on a motion to enforce a settlement, the movant must essentially meet a summary judgment standard."  Behrend v. Comcast Corp., No. 03-6604, 2012 U.S. Dist. LEXIS 137451 at *17 (E.D. Pa. Sept. 25, 2012)(citing Tiernan v. Devoe, 923 F.2d 1024, 1031-1032 (3d Cir. 1991) and Quandry Solutions, Inc. v. Verifone, Inc., No. 07-097, 2009 U.S. dist. LEXIS 31459, 2009 WL 997041 at *5 (E.D. Pa. April 13, 2009)).  That is, the moving party "must show that there are no disputed material facts regarding whether a contract was formed, and that there are no disputed material facts regarding the terms of the contract."  Id.  It is only then that a settlement agreement is properly enforced.

**<u>Discussion</u>**

In this case, Plaintiff asserts that on July 20, 2012, two days before this case was scheduled for trial, "the parties agreed to a settlement where Defendants would pay ... $29,750.00 to Plaintiff in exchange for a general release."  (Pl.'s Motion to Enforce Settlement, ¶7).  Then, "[s]ubsequent to July 20, 2012, Defendants began imposing new conditions on the settlement despite representing to the Court that the matter was settled," one of which was "that Medicare verify that they do not have a lien over the settlement."   (Pl.'s Motion, ¶s 8,9).  According to Plaintiff, she has sought and obtained a letter from Medicare which states that it did not pay any claims relative to the accident, but Defendants have still failed to provide a Release for Plaintiff's signature or the settlement funds.  (Pl.'s Motion, ¶s10, 12).

In opposing Plaintiff's motion for the enforcement of the settlement, Defendants contest Plaintiff's version of events. Instead, Defendants contend that "[a]t the time of settlement, defense counsel discussed with plaintiff's counsel via telephone a lien in the amount of $26,830.49 being asserted by Blue Cross and the possibility of the entire lien or portions of the lien being subject to the [Medicare Secondary Payer] Act and/or other medical expenses, not included in this known lien, paid or to be payable being subject to the Act."  In purported follow-up to

this discussion, defense counsel "forwarded plaintiff's counsel a letter via facsimile, which confirmed the settlement amount and specifically stated 'This settlement is subject to final agreement to all settlement terms in a Release." (emphasis in original).

In light of the parties' assertions, it appears that the relevant portions of the Medicare Secondary Payer Act, particularly 42 U.S.C. §1395y(b) and the Medical Care Recovery Act, 42 U.S.C. §2651 are at issue here. The Medicare Secondary Payer Act ("MSP") reads as follows in pertinent part:

> (B) Conditional payment. (I) Authority to make conditional payment.  The Secretary may make payment under this title with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations).  Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.
>
> (ii) Repayment required.  A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this title [42 U.S.C. §1395 et. seq.] with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.  A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.  If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60-day period that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or other information

>is received, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made... .
>
>(iii) Action by United States.  In order to recover payment made under this title [42 U.S.C. §§1395 et. seq.] for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan.  The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity.  In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity.
>
>(iv) Subrogation rights.  The United States shall be subrogated (to the extent of payment made under this title [42 U.S.C. §§1395 et. seq.] for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan.
>
>(v) Waiver of rights.  The Secretary may waive (in whole or in part) the provisions of this subparagraph in the case of an individual claim if the Secretary determines that the waiver is in the best interests of the program established under this title [42 U.S.C. §§1395, et. seq.]
>
>(vi) Claims-filing period.  Notwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

42 U.S.C. §1395y(b)(2)(B)(I).

>And, under the Medical Care Recovery Act, 42 U.S.C.

§2651(a) ("MCRA"),

> ... In any case in which the United States is authorized or required by law to furnish or pay for hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person ... to pay damages therefor the United States shall have a right to recover (independent of the rights of the injured or diseased person) from said third person or that person's insurer, the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim.

Thus under the preceding statutes, the Government is authorized to bring a direct claim against primary and/or private insurance providers "as well as any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a third party payment." United States v. Weinberg, No. 01-0679, 2002 U.S. Dist. LEXIS 12289 at *7-*8 (E.D. Pa. July 1, 2002)(citing Manning v. Utilities Mutual Insurance Co., 254 F.3d 387, 397 (2d Cir. 2001) and 42 C.F.R. §411.24(g)). See also, United States v. Theriaque, 674 F. Supp. 395, 400 (D. Mass. 1987)("[I]t may not be doubted that the MCRA created in the government a federal

7

substantive right to recover medical expenditures where a tortfeasor is found to have caused the injuries requiring the treatment.... The government's right of action under the MCRA in this case is independent of [plaintiff's] claim against defendants..."); Brown v. American Home Care Products Corp., No. 99-25093, MDL Dkt. No. 1203, 2001 U.S. Dist. LEXIS 2959 at *32 (E.D. Pa. March 21, 2001)("The MSP grants the Government a cause of action against the primary payer or any person who has received payment therefrom for reimbursement of those payments or double damages. ... Thus, like the MCRA, the MSP creates a direct cause of action in favor of the Government that is enforceable through judicial action..." (citing Health Ins. Ass'n v. Shalala, 306 U.S. App. D.C. 104, 23 F.3d 412, 425(1994); 42 U.S.C. §1395y(b)(2)(B)(ii)).

Consequently, the government's independent right of recovery against the tortfeasor is not extinguished by the injured party's settlement and release with the tortfeasor. Holbrook v. Andersen Corp., 996 F.2d 1339, 1341 (3d Cir. 1993); Brown, supra, at *26. In like fashion, 42 C.F.R. §411.24(I) provides in relevant part as follows:

> Special rules.  (1) In the case of liability insurance settlements and disputed claims under employer group health plans, workers' compensation insurance or plan, and no-fault insurance, the following rule applies: If Medicare is not reimbursed as required by paragraph (h) of this section [relating to Medicare reimbursement by beneficiary or other party within 60 days of receipt of primary payment], the primary payer must reimburse Medicare even though it has

    already reimbursed the beneficiary or other party.

    (2) The provisions of paragraph (i)(1) of this section also apply if a primary payer makes its payment to an entity other than Medicare when it is, or should be, aware that Medicare has made a conditional primary payment.

    ...

Reading all of the preceding statutes and regulations in pari materia leads us to conclude that the government remains free to pursue its reimbursement rights against a primary payer[1] regardless of whether or not the payer has settled a liability claim with and paid monies in settlement to a medicare recipient. However, the government is also free to waive its rights to reimbursement if it determines that such waiver would be "in the best interests of the program."  42 U.S.C. §1395y(b)(2)(B)(v). In the event that the government does elect to seek reimbursement, it is incumbent upon the government to show how much money it is entitled to from a settlement fund. See, e.g., Weinstein v. Sebelius, No. 12-154, 2013 U.S. Dist. LEXIS 41594 at *15-*16 (E.D. Pa. Feb. 13, 2013)("Under the updated statutory language, Medicare may satisfy its burden by showing AEMC is 'responsible' for the contested medical expenses." ... "Responsibility may be demonstrated by a settlement of a tort claim that sought recovery of medical expenses..." internal

---

[1]  A "primary plan" means a group health plan or large group health plan, a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including self-insured plans).  42 U.S.C. §1395y(b)(2)(A)(ii).

citations omitted); United States v. Weinberg, supra, 2002 U.S. Dist. LEXIS at *20 ("A fact issue exists ... as to whether [plaintiff's] stroke was causally related to the motor vehicle accident.  If the two were unconnected, Medicare may not seek reimbursement... the burden of proving causation rests upon the Government. ...").

In application of the foregoing principles to the motion now before this Court, there are a number of factual questions left unresolved upon the existing record.  For one, noticeably absent from the record here is a draft of a release and/or a settlement agreement.  As a result, the actual settlement terms are patently unclear – we cannot discern whether or not the settlement figure agreed to by the parties was to include the funds needed to reimburse Medicare for the monies expended to pay for Plaintiff's medical care.  We likewise do not know whether Medicare in fact paid for Ms. Mackrides' emergency, surgical and other costs attendant to her fall at Defendants' store, how much that medical care cost or when it was paid, or whether Medicare has elected to waive its reimbursement rights.  Rather, the only evidence on these points on this record are copies of correspondence between Plaintiff's counsel and CMS which evince that Plaintiff's counsel did advise CMS of the settlement and that he completed a Final Settlement Detail Document disclosing Med-Pay/PIP benefits of $26,830.49 and attorneys' fees and costs totally $14,511.94.  In

response, CMS forwarded a letter to Plaintiff's counsel asserting that "[t]o date, Medicare has not paid any claims that currently appear related to the beneficiary's pending settlement, judgment, or award for the above referenced [October 29, 2009] incident."

From the foregoing, it is obvious that there are multiple disputed material facts regarding whether a contract was formed here and if so, what the terms of that settlement contract are. Given this confusion and the paucity of record evidence on these points, we clearly cannot grant the Plaintiff's motion to enforce.

However, although Defendants are clearly correct that the government is empowered to bring suit against them and/or their liability insurer for reimbursement of Plaintiff's Medicare expenditures, it also appears that such an action is already or is dangerously close to being time-barred given that the time for seeking reimbursement is limited to the 3-year period beginning on the date on which the item or service was furnished. See, 42 U.S.C. §1395y(b)(2)(B)(vi); 28 U.S.C. §2415(b). In light of the statutory time bar and the CMS letter indicating that its records do not reflect any Medicare payments relative to this claim, we are frankly hard-pressed to understand why Defendants' have failed to even tender a proposed release or settlement agreement to the Plaintiff. Indeed, we find Defendants' non-action on this point to be clearly dilatory, unreasonable and bordering on

11

sanctionable conduct given the Plaintiff's advanced age. Accordingly, although we are constrained to deny the motion to enforce the settlement given the vagaries which surround it, we shall order the parties to show cause why this matter should not be immediately re-listed for jury trial and order Defendants to show cause why they should not be subject to appropriate trial and/or monetary sanctions.

An order follows.